# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 18, 2004

## DAN BILL JOHNSON v. HOWARD CARLTON, Warden

**Direct Appeal from the Criminal Court for Johnson County**
**No. 4174     Robert E. Cupp, Judge**

_____

### No. E2003-03010-CCA-R3-CD - Filed July 22, 2004

_____

The petitioner, Dan Bill Johnson, sought habeas corpus relief, asserting that his five-year robbery sentence had expired. Although not granting the relief sought by the petitioner, the trial court determined that his life sentence had expired and identified the date at which he began serving his robbery sentence, with the Department of Correction then to determine his release date. Both the petitioner and the State appealed. Following our review, we reverse the order of the trial court and dismiss the petition for writ of habeas corpus. The petitioner is to be returned to custody.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Paul G. Summers, Attorney General and Reporter, and David H. Findley, Assistant Attorney General, for the appellant, State of Tennessee.

Dan Bill Johnson, Lucedale, Mississippi, Pro Se.

### OPINION

### <u>FACTS</u>

The petitioner, Dan Bill Johnson, was convicted of third degree burglary and sentenced to life imprisonment as an habitual criminal, which this court affirmed on direct appeal. <u>See</u> <u>State v. Dan Bill Johnson</u>, No. 61, 1989 WL 86573, at *1 (Tenn. Crim. App. Aug. 2, 1989), <u>perm. to appeal denied</u> (Tenn. Dec. 4, 1989). He was subsequently paroled on August 5, 1994, but his parole was revoked in 1998 because of a new felony arrest, resulting in his conviction for robbery in the Hamilton County Criminal Court on February 16, 1999, with an additional five years to be served consecutively to his parole violation.

The petitioner filed a *pro se* petition for writ of habeas corpus on April 30, 2003, alleging that, at the July 30, 1999, hearing, the Tennessee Board of Probation and Parole ("the Board") determined that he would serve time on his parole violation of the life sentence until July 30, 2000, at which time he would begin serving his new five-year sentence, and, by virtue of his various credits, his robbery sentence had expired on April 26, 2003.

On May 16, 2003, in response to the original petition, the State filed a motion to dismiss, arguing that the petitioner was not entitled to habeas corpus relief because, according to his TOMIS report, he was serving a life sentence as an habitual criminal, as was reflected in the opinion of this court affirming his conviction, see Dan Bill Johnson, 1989 WL 86573, at *1, and his first "RED date" was October 24, 2013. Agreeing with the State's arguments, the trial court entered an order on May 19, 2003, dismissing the petition. On May 20, 2003, according to the certificate of service, the petitioner mailed a pleading styled "Notice of Amendment to Petition for Writ of Habeas Corpus," which was filed by the clerk on May 22, 2003, arguing that he had a right to amend his petition since the State had filed a motion to dismiss rather than an answer to his petition. In the notice of amendment, the petitioner alleged that the Tennessee Department of Correction ("TDOC") had determined, in a "time setting hearing" on July 30, 1999, that he would "continue to serve parole violation time on the life sentence . . . until July 30, 2000, then begin serving the consecutive five year sentence . . . and return for review when eligible on the five year sentence." Additionally, he argued that, following a hearing, he was denied parole on April 30, 2002, even though, by virtue of "accumulation of behavior and program credit days, the five year [robbery] sentence expired on April 26, 2003. Thus, by the petitioner's argument, he had been illegally incarcerated since April 26, 2003, four days after he had filed his original petition. Although the notice of amendment recites that certain documents were attached as exhibits, none of these are included in the technical record. Apparently, after receiving a copy of the order of May 19, 2003, dismissing his claim, the petitioner filed, on May 28, 2003, a "Motion to Alter or Amend Judgment," asking that the trial court consider his amendment because he had not had enough time to respond to the State's motion to dismiss.

On June 30, 2003, the State filed a response to the petitioner's notice of amendment and motion to alter or amend judgment, asserting that the petitioner's life sentence had not expired and, at the July 30, 1999, time-setting hearing, the parole board "determined that [the petitioner] would not begin getting credit" for his five-year robbery sentence until July 30, 2000. The next action in this matter occurred on July 16, 2003, when the petitioner filed a pleading styled "Notice of Filing of Transcript and Audio Cassette Recording of Parole Time Setting Hearing Held July 30, 1999," to which was attached what purported to be the transcript of this hearing. The record on appeal does not include the audiocassette which, according to the pleading, was filed with it. The only certification of the transcript was the affidavit of the petitioner that it was "a true and accurate account of the proceeding taken directly from the Tennessee Board of Probation and Parole's audio recording of said proceeding, to the best of [his] knowledge and belief." As we will explain, it appears that this transcript was prepared by the petitioner himself. The index on the first page of the transcript lists pages 11 and 12 respectively as being the "Certificate of Relator-Petitioner" and "Letter from the Tennessee Board of Probation and Parole verifying authenticity of tape," which, according to the index, is attached to page 13. However, the copy of the transcript in the record on

appeal does not include either page 12, the letter from the Board, or page 13 to which, according to the index, the audiotape was attached. Page 11, referred to in the index, which is in the record, is the petitioner's certificate of service for the transcript, bearing his name as the affiant and the phrase "[s]worn to and subscribed before me on this the 14th day of July, 2003." Further, the certificate of service states that a copy of it was mailed to counsel representing the State in the petitioner's habeas corpus claim "on this the 14th day of July, 2003." Thus, while this transcript purports to be of a July 30, 1999, "parole time setting hearing," it obviously was prepared after his habeas corpus petition had been filed in 2003 and for use in that action, rather than by the TDOC or the Board as a record of the hearing. The petitioner, himself, "certified" the transcript, and it is in the record on appeal only because it was an attachment to a pleading.

On July 23, 2003, the State filed the affidavit of Donna Blackburn, Executive Director of the Tennessee Board of Probation and Parole, which stated as follows:

> I, Donna Blackburn, Executive Director for the Tennessee Board of Probation and Parole, do hereby swear and affirm the following:
>
> 1. Dan Bill Johnson, Tennessee Department of Correction inmate number 122614, is currently classified as a Habitual Criminal as he was sentenced as such in 1988. (See Affidavit Exhibit 1)
>
> 2. As listed on the Parole Summary Report, there is no expiration date on a life sentence, the sentence Mr. Johnson received for being a habitual criminal. (See Affidavit Exhibit 1)
>
> 3. Mr. Johnson was heard for parole in April of 2002, but was declined based upon High Risk to reoffend. His next parole date is April of 2004. (See Affidavit Exhibit 2)
>
> 4. I certify that the attached exhibits are true and correct copies of the documents kept in the parole file of Dan Bill Johnson, which is located in the Central Office of the Tennessee Board of Probation and Parole.
>
> Further the affiant saith not.

Among the documents attached to this affidavit was the TDOC form "Notice of Board Action" which set out that, in April 2002, the petitioner had been denied parole and was to be considered again in April 2004. The TOMIS report, which also was an attachment to the affidavit, set out that the "RED" date for the petitioner's life sentence was April 27, 2014. On July 29, 2003, the petitioner filed an unsworn response to the Blackburn affidavit, asserting that it showed the State had "illegally reinstated [his] previous 2014 Release Eligibility Date that was amended to August

5, 1994, by the Parole Eligibility Review Board." The petitioner further explained his earlier claims, saying he was "not arguing that his life sentence has expired or that the parole board does not have the authority to continue to confine him" but that he had a "liberty interest" and right to due process in not serving a sentence beyond that which "the parole board decided on July 30, 1999, . . . [he] would serve on the revoked life sentence."

Although the record on appeal includes no interim rulings or orders of the trial court as to the various pleadings filed after its May 19, 2003, order dismissing the petition, on December 3, 2003, the trial court filed a supplemental order, finding, *inter alia*, that the petitioner's life sentence had expired on July 30, 2000. The court's order did not explain its basis for making this determination. Additionally, based upon the following colloquy, set out in the transcript attached to the petitioner's pleading, between John Greer, a Board hearing officer, and the petitioner at the July 30, 1999, parole board hearing, the trial court found that the petitioner began serving his five-year robbery sentence on July 30, 2000:

> Mr. Greer: I'll tell you what I'm going to do[,] Mr. Johnson[.] [Y]ou got this charge February 16, 1999, that's when you were convicted?
>
> Petitioner: Yes sir.
>
> Mr. Greer: I'm gonna say start your new five year sentence July 30 of 2000, alright? Serve that until July 30, 2000, that's a year from today on the revoked sentence, that is the life. Serve up until then. You'll be doing old time. Then on July 30 of 2000, let your five year kick in. Start calculating that. When you become eligible or if you are already eligible to be heard again on that five, or then hear you on the life and the five, let the five start running together with the five [sic] at that point and when you become eligible for parole or to be reviewed, then, . . . place you back on the docket and will review you at that point. Now, that's just what I'm gonna recommend. The Board may not concur. They could accept, reject or modify my recommendation, but that's what I'm gonna recommend. Again, your new five years on July 30, 2000, and then review you again when you're eligible. Got to include the life sentence plus the five. They go over me, then they'll put you on the first available docket after you become eligible.

In its December 3, 2003, order, the trial court interpreted this language from the transcript of the hearing before the Board as establishing that the petitioner's life sentence had expired on July 30, 2000, and he had begun serving his five-year robbery sentence that same day:

> It is quite obvious from reading the dialog between Mr. Greer and Petitioner that Mr. Greer recommended to the Parole Board that

the new five year sentence would begin on July 30, 2000. He furthermore says "serve that, (meaning the life sentence) until July 30, 2000, that's a year from today on the revoked sentence that is the life." However, he also says that "they go over me, then they'll put you on the first available docket after you become eligible." Therefore, it is apparent that this is what has happened in this case as the Parole Board gave the Petitioner a hearing on April 30, 2002 and declined him for parole, **not on the life sentence, but on the simple robbery conviction**. [emphasis in original].

Therefore, the only charge that can be considered against this Petitioner as far as his release eligibility is [the] simple robbery charge, as the life sentence expired on July 30, 2000. Moreover, the Petitioner cites T.C.A. Sect. 40-28-123 which states: "any prisoner who is convicted in this state of a felony committed while on parole from a state prison, jail or workhouse, shall serve the remainder of this sentence under which the prisoner was **paroled, or such part of that sentence**, as the Board may determine before the prisoner commences serving the sentence received for the felony committed while on parole. . . . (emphasis added). This is exactly what the Board did in the Petitioner's case. At the Parole time setting hearing on July 30, 1999, Mr. Greer stated[,] "I'm going to start your new five year sentence July 30, 2000, alright, serve that until July 30, 2000, that's a year from today on the revoked sentence, that is the life." Nothing could be more plain than what the parole board told this petitioner. [emphasis in original].

However, this brings the Court to another inquiry and that is the board's refusal to release him after denying parole on April 30, 2002. Petitioner claims that an accumulation of behavioral and program credit days on his five year sentence should have expired him on April 26, 2003. This issue is not a matter for this court for two reasons. First, the Parole Board makes the determination on parole. See T.C.A. Sect. 40-28-115. Furthermore, according to this section the release shall be discretionary with the board. Secondly, if this Petitioner is trying to get credits that he claims he is entitled and the Tennessee Department of Corrections is not recognizing these credits, then these disputes over sentence reduction credits are properly brought under the Uniform Administrative Procedures Act. See **Carol v. Ramey**, 868 S.W.2d 721, 723 (Tenn. Crim. App. 1993).

It is therefore the Order of this Court that the Petitioner's life sentence expired on July 30, 2000. However, his release relative to the simple robbery charge is a matter for the Parole Board.

The State then filed a motion to stay the trial court's order, reciting that the State had contacted Debra Inglis, a staff attorney for the Department of Correction, who verified that the petitioner was "not granted parole from his life sentence at the time-setting hearing on July 30, 1999, but that the only determination made at that time was when the petitioner would begin getting credit for service of his five year[] sentence on the robbery charge, pursuant to the time-setting provisions of Tenn. Code Ann. § 40-28-123(a)."[1]

On December 5, 2003, two days after entry of the court's order, the Hawkins County Circuit Court Clerk filed a pleading of the petitioner, which he had dated December 3, 2003, styled "Notice of Filing of Additional Exhibits in Support of Motion to Alter or Amend Judgment." According to the pleading, the documents had "only recently become available" and were for consideration by the trial court "in support of [the petitioner's] Motion to Alter or Amend Judgment." On December 16, 2003, the trial court entered an order granting the State's motion to stay. Both the petitioner and the State filed notices of appeal on December 22, 2003.[2]

## ANALYSIS

The State appeals the trial court's order finding that the petitioner's sentence had expired, arguing that "the only purpose of the time-setting hearing was to determine when [the petitioner] would begin getting credit for service of the five-year sentence." The petitioner also appealed the order of the trial court, arguing, as we understand his claims, that he had been confined illegally

---

[1]That statute provides, in pertinent part:

> Any prisoner who is convicted in this state of a felony, committed while on parole from a state prison, jail or workhouse, shall serve the remainder of the sentence under which the prisoner was paroled, or such part of that sentence, as the board may determine before the prisoner commences serving the sentence received for the felony committed while on parole. . . . The board shall require that the prisoner serve the portion remaining of the maximum term of sentence or such part as the board may determine. The board, at its discretion, may recommend to the commissioner of correction the removal of all or any part thereof of the good and honor time and incentive time accrued on the sentence under which the prisoner was paroled.

Tenn. Code Ann. § 40-28-123(a).

[2]In its brief, the State says that the petitioner filed his notice of appeal on December 8, 2003, before the stay order was entered on December 16, 2003, thereby depriving the trial court of jurisdiction and rendering the stay order a nullity. However, the petitioner's notice of appeal bears the stamped file date of December 22, 2003, not December 8, 2003.

before being released, and he had "a liberty interest to parole that is protected under the Due Process Clauses of the Tennessee and United States Constitutions."

It is well-established in Tennessee that the remedy provided by a writ of habeas corpus is limited in scope and may only be invoked where the judgment is void or the petitioner's term of imprisonment has expired. State v. Ritchie, 20 S.W.3d 624, 629 (Tenn. 2000); State v. Davenport, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998). A void, as opposed to a voidable, judgment has been defined by our supreme court as "one in which the judgment is facially invalid because the court did not have the statutory authority to render such judgment." Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998); see also Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). The judgment of a court of general jurisdiction is conclusive and presumed to be valid, and such a judgment can only be impeached if the record affirmatively shows that the rendering court was without personal or subject matter jurisdiction. Archer v. State, 851 S.W.2d 157, 162 (Tenn. 1993). Thus, habeas corpus relief is available only when "'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment . . . has expired." Archer, 851 S.W.2d at 164 (citation omitted). To obtain habeas corpus relief, the petitioner must show by a preponderance of the evidence that his sentence is void and not merely voidable. See Davenport, 980 S.W.2d at 409.

As explained by Pierce v. Corrections Corp. of America, No. W2001-00595-COA-R3-CV, 2001 WL 1683792, at *2 (Tenn. Ct. App. Dec. 20, 2001), "[h]abeas corpus proceedings are essentially civil in nature and the rules of civil procedure are applicable where consistent with Tenn. Code Ann. § 29-21-101 et. seq."

We now will review the trial court's finding, according to its December 3, 2003, order, "that the Petitioner's life sentence expired on July 30, 2000. However, his release relative to the simple robbery charge is a matter for the Parole Board." Apparently, as the result of the trial court's determinations that the petitioner's life sentence expired on July 30, 2000, and he began serving his five-year robbery sentence that day, the Department of Correction recalculated his robbery sentence and released him before the trial court entered the stay order.

This court stated in Brigham v. Lack, 755 S.W.2d 469, 471 (Tenn. Crim. App. 1988), that "the Department of Corrections is an agency of state government subject to the provisions of the Administrative Procedures Act, and judicial review of its application of a statute to an affected person is available only in the Chancery Court of Davidson County. T.C.A. §§ 4-5-223, -224." In making determinations as to the ending date of the petitioner's life sentence and the beginning date of his robbery sentence, the trial court, in effect, granted declaratory relief, which might have been available in an action brought pursuant to the Tennessee Administrative Procedures Act but could not be made in one seeking habeas corpus relief.

Further, the trial court erred, as both the State and the petitioner, himself, agree on appeal, in finding that the petitioner's life sentence expired on July 30, 2000. See Carroll v. Raney, 953

S.W.2d 657, 661 (Tenn. 1997) ("[A] life sentence does not expire until a defendant's death."); <u>Daniel B. Taylor v. Donal Campbell</u>, No. M2001-00479-COA-R3-CV, 2003 WL 22248231, at *4 (Tenn. Ct. App. Oct. 1, 2003) ("By definition, a life sentence expires on the same day the prisoner does."). Accordingly, since the petitioner's sentence neither has expired nor is void, he is not entitled to habeas corpus relief.

Since the erroneous finding that the petitioner's life sentence had expired apparently resulted in his being released from custody in December 2003, prior to his next parole hearing in April 2004, we direct that the petitioner be taken back into custody and returned to the Tennessee Department of Correction, where he is to remain until his release, as determined by the Department. Although he may apply to the Tennessee Supreme Court for permission to appeal our determination, he is not entitled to bond while that matter is being considered.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we reverse the judgment of the trial court and dismiss the petition for writ of habeas corpus.

_____
ALAN E. GLENN, JUDGE